**UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **In Re:** | **In Bankruptcy No:** |
| **TAMMY HASS** | |
| **Debtor** | **Case No: 22-10843 (Chapter 13)** |

**MOTION TO SELL CERTAIN REAL ESTATE FREE AND CLEAR OF ALL LIENS
PURSUANT TO BANKRUPTCY CODE SECTION 363(f)**

Tammy Hass, Debtor/Debtor in possession, by her attorneys PITTMAN & PITTMAN LAW

OFFICES, LLC by Greg P. Pittman hereby moves the Court for an Order to sell her homestead and any

surrounding land free and clear of all liens pursuant to Bankruptcy Code Section 363(f). The sale of the

real estate is set forth in the agreement to be sold free and clear of all liens attaching to the proceeds in order

of priority. Enclosed is as follows:

1. Offer to Purchase by Marcus Klug and Kate Klug. (Exhibit #1).

2. Real Estate Description. (Exhibit #2)

3. Title Commitment (Exhibit #3).

4. Mortgages, judgment liens, contracts, tax liens, construction liens, debts and a variety of other

   liens against the property (Exhibit #4).

The proceeds from the sale will be used in the following order:

1. Closing costs relating to the sale of property including title policy, transfer fees, recording fees,

   real estate agent commissions, surveying costs, (if necessary) attorney's fees and disbursements

   for Greg P. Pittman (not to exceed $2,500.00) relating to the sale of the property or other

   necessary and miscellaneous closing costs to complete the transaction.

2. Payment of any delinquent or accrued real estate taxes that are not covered by the buyers in the

   offer to purchase.

3. Payment of the mortgage held by River Bank in full.

4.  Payment to the Chapter 13 Trustee to complete the Plan in full.

5.  The balance of the proceeds paid over to the debtor Tammy Hass.

**Dated this 10th day of March, 2026 at La Crosse, Wisconsin.**

**PITTMAN & PITTMAN LAW OFFICES, LLC**

**By:    s/Greg P. Pittman**
**Greg P. Pittman**
**Attorney for Debtor**
**Attorney No: 1073787**
**712 Main Street**
**La Crosse, WI  54601**
**(608) 784-0841**

Approved by the Wisconsin Real Estate Examining Board
7-1-24 (Optional Use Date) 8-15-24 (Mandatory Use Date)

EXP Realty, LLC
Page 1 of 11, WB-11

## WB-11 RESIDENTIAL OFFER TO PURCHASE

**LICENSEE DRAFTING THIS OFFER ON** _____ January 28, 2026 _____ **[DATE] IS (AGENT OF BUYER)**
~~(AGENT OF SELLER/LISTING FIRM) (AGENT OF BUYER AND SELLER)~~ **STRIKE THOSE NOT APPLICABLE**

The Buyer, _____ Marcus Klug, Kate Klug _____ ,

offers to purchase the Property known as [Street Address] _____ 3012 Willow Dr _____

_____ 3014 Willow Dr _____

in the _____ City _____ of _____ La Crosse _____ , County

of _____ La Crosse _____ Wisconsin (insert additional description, if any, at lines 548-570 or

in an addendum per line 592), on the following terms:

**PURCHASE PRICE** The purchase price is Two Hundred Thirty-Five Thousand

_____ Dollars ($235,000.00 _____ ).

**INCLUDED IN PURCHASE PRICE** Included in purchase price is the Property, all Fixtures on the Property as of the date
stated on line 1 of this Offer (unless excluded at lines 20-23), and the following additional items: Fridge in mudroom,
fridge in basement, outdoor above ground pool.

**NOTE: The terms of this Offer, not the listing contract or marketing materials, determine what items are included
or not included.**

**NOT INCLUDED IN PURCHASE PRICE** Not included in purchase price is Seller's personal property (unless included at
lines 12-16) and the following: Fridge in Kitchen, Stove/Range, Microwave, Washer, Dryer, Security
System, All Keypad Coded Door Handle Sets.

**CAUTION: Identify Fixtures that are on the Property (see lines 26-36) to be excluded by Seller or that are rented
(e.g., water softeners or other water treatment systems, LP tanks, etc.) and will continue to be owned by the lessor.**
"Fixture" is defined as an item of property which is physically attached to or so closely associated with land, buildings or
improvements so as to be treated as part of the real estate, including, without limitation, physically attached items not easily
removable without damage to the premises, items specifically adapted to the premises and items customarily treated as
fixtures, including, but not limited to, all: garden bulbs; plants; shrubs and trees; screen and storm doors and windows;
electric lighting fixtures; window shades; curtain and traverse rods; blinds and shutters; central heating and cooling units
and attached equipment; water heaters, water softeners and treatment systems; sump pumps; attached or fitted floor
coverings; awnings; attached antennas and satellite dishes (but not the component parts); audio/visual wall mounting
brackets (but not the audio/visual equipment); garage door openers and remote controls; installed security systems; central
vacuum systems and accessories; in-ground sprinkler systems and component parts; built-in appliances; ceiling fans;
fences; in-ground pet containment systems, including receiver components; storage buildings on permanent foundations
and docks/piers on permanent foundations.
**CAUTION: Exclude any Fixtures to be retained by Seller or which are rented (e.g., water softeners or other water
treatment systems, LP tanks, etc.) on lines 20-23 or at lines 548-570 or in an addendum per line 592).**

**BINDING ACCEPTANCE** This Offer is binding upon both Parties only if a copy of the accepted Offer is delivered to Buyer
on or before _____ January 28, 2026 _____ . Seller may keep the
Property on the market and accept secondary offers after binding acceptance of this Offer.
**CAUTION: This Offer may be withdrawn prior to delivery of the accepted Offer.**

**ACCEPTANCE** Acceptance occurs when all Buyers and Sellers have signed one copy of the Offer, or separate but identical
copies of the Offer.
**CAUTION: Deadlines in the Offer are commonly calculated from acceptance. Consider whether short term
Deadlines running from acceptance provide adequate time for both binding acceptance and performance.**

**CLOSING** This transaction is to be closed on _____ On or before 03/30/2026 _____
_____ at the place selected by Seller,
unless otherwise agreed by the Parties in writing. If the date for closing falls on Saturday, Sunday, or a federal or a state
holiday, the closing date shall be the next Business Day.
**CAUTION: To reduce the risk of wire transfer fraud, any wiring instructions received should be independently
verified by phone or in person with the title company, financial institution, or entity directing the transfer. The real
estate licensees in this transaction are not responsible for the transmission or forwarding of any wiring or money
transfer instructions.**

EXP Realty, LLC, 1446 Rose Street La Crosse WI 54601                    Phone (608)785-0888    Fax                    3012 Willow Dr
Hayden Schmidt                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Package ID: E1428694DEEF283269AF0AE210C12618



Property Address: 3012 Willow Dr, La Crosse, WI  54601 _____ Page 2 of 11, WB-11

**EARNEST MONEY**

■ EARNEST MONEY of $ _____ accompanies this Offer.

If Offer was drafted by a licensee, receipt of the earnest money accompanying this Offer is acknowledged.

■ EARNEST MONEY of $ 5,000.00 _____ will be mailed, or commercially, electronically or personally delivered within _____ days ("5" if left blank) after acceptance.

All earnest money shall be delivered to and held by (listing Firm) (drafting Firm) (other identified as Title Company _____ ) **STRIKE THOSE NOT APPLICABLE** (listing Firm if none chosen; if no listing Firm, then drafting Firm; if no Firm then Seller).

**CAUTION: If a Firm does not hold earnest money, an escrow agreement should be drafted by the Parties or an attorney as lines 67-87 do not apply. If someone other than Buyer pays earnest money, consider a special disbursement agreement.**

■ THE BALANCE OF PURCHASE PRICE will be paid in cash or equivalent at closing unless otherwise agreed in writing.

■ DISBURSEMENT IF EARNEST MONEY HELD BY A FIRM: If negotiations do not result in an accepted offer and the earnest money is held by a Firm, the earnest money shall be promptly disbursed (after clearance from payer's depository institution if earnest money is paid by check) to the person(s) who paid the earnest money. At closing, earnest money shall be disbursed according to the closing statement. If this Offer does not close, the earnest money shall be disbursed according to a written disbursement agreement signed by all Parties to this Offer. If said disbursement agreement has not been delivered to the Firm holding the earnest money within 60 days after the date set for closing, that Firm may disburse the earnest money: (1) as directed by an attorney who has reviewed the transaction and does not represent Buyer or Seller; (2) into a court hearing a lawsuit involving the earnest money and all Parties to this Offer; (3) as directed by court order; (4) upon authorization granted within this Offer; or (5) any other disbursement required or allowed by law. The Firm may retain legal services to direct disbursement per (1) or to file an interpleader action per (2) and the Firm may deduct from the earnest money any costs and reasonable attorneys' fees, not to exceed $250, prior to disbursement.

■ LEGAL RIGHTS/ACTION: The Firm's disbursement of earnest money does not determine the legal rights of the Parties in relation to this Offer. Buyer's or Seller's legal right to earnest money cannot be determined by the Firm holding the earnest money. At least 30 days prior to disbursement per (1), (4) or (5) above, where the Firm has knowledge that either Party disagrees with the disbursement, the Firm shall send Buyer and Seller written notice of the intent to disburse by certified mail. If Buyer or Seller disagrees with the Firm's proposed disbursement, a lawsuit may be filed to obtain a court order regarding disbursement. Small Claims Court has jurisdiction over all earnest money disputes arising out of the sale of residential property with one-to-four dwelling units. Buyer and Seller should consider consulting attorneys regarding their legal rights under this Offer in case of a dispute. Both Parties agree to hold the Firm harmless from any liability for good faith disbursement of earnest money in accordance with this Offer or applicable Department of Safety and Professional Services regulations concerning earnest money. See Wis. Admin. Code Ch. REEB 18.

**TIME IS OF THE ESSENCE** "Time is of the Essence" as to: (1) earnest money payment(s); (2) binding acceptance; (3) occupancy; (4) date of closing; (5) contingency Deadlines STRIKE AS APPLICABLE and all other dates and Deadlines in this Offer except:_____

_____. If "Time is of the Essence" applies to a date or Deadline, failure to perform by the exact date or Deadline is a breach of contract. If "Time is of the Essence" does not apply to a date or Deadline, then performance within a reasonable time of the date or Deadline is allowed before a breach occurs.

**REAL ESTATE CONDITION REPORT** Wisconsin law requires owners of property that includes one-to-four dwelling units to provide Buyers with a Real Estate Condition Report. Excluded from this requirement are sales of property that has never been inhabited, sales exempt from the real estate transfer fee, and sales by certain court-appointed fiduciaries, (for example, personal representatives who have never occupied the Property). The form of the Report is found in Wis. Stat. § 709.03. The law provides: "§ 709.02 Disclosure . . . the owner of the property shall furnish, not later than 10 days after acceptance of the contract of sale . . ., to the prospective Buyer of the property a completed copy of the report . . . A prospective Buyer who does not receive a report within the 10 days may, within two business days after the end of that 10-day period, rescind the contract of sale . . . by delivering a written notice of rescission to the owner or the owner's agent." Buyer may also have certain rescission rights if a Real Estate Condition Report disclosing defects is furnished before expiration of the 10 days, but after the Offer is submitted to Seller. Buyer should review the report form or consult with an attorney for additional information regarding rescission rights.

**PROPERTY CONDITION REPRESENTATIONS** Seller represents to Buyer that as of the date of acceptance Seller has no notice or knowledge of Conditions Affecting the Property or Transaction (lines 112-177) other than those identified in Seller's Real Estate Condition Report dated _January 21, 2026_, which was received by Buyer prior to Buyer signing this Offer and which is made a part of this Offer by reference COMPLETE DATE OR STRIKE AS APPLICABLE and

_____

_____

_____ INSERT CONDITIONS NOT ALREADY INCLUDED IN THE CONDITION REPORT

"Conditions Affecting the Property or Transaction" are defined to include:

a.   Defects in the roof, basement or foundation (including cracks, seepage and bulges), electrical system, or part of the plumbing system (including the water heater, water softener and swimming pool); or basement, window, or plumbing leaks;

Package ID: E1428694DEEF283269AF0AE210C12618

Property Address: <u>3012 Willow Dr, La Crosse, WI  54601</u>                                                              Page 3 of 11, WB-11

overflow from sinks, bathtubs, or sewers; or other water or moisture intrusions or conditions.

b.    Defects in heating and air conditioning system (including the air filters and humidifiers); in a wood burning stove or fireplace; or caused by a fire in a stove or fireplace or elsewhere on the Property.

c.    Defects related to smoke detectors or carbon monoxide detectors, or a violation of applicable state or local smoke detector or carbon monoxide detector laws.

d.    Defects in any structure, or mechanical equipment included as Fixtures or personal property.

e.    Rented items located on the Property such as a water softener or other water conditioner system.

f.    Defects caused by unsafe concentrations of, or unsafe conditions on the Property relating to radon, radium in water supplies, lead in paint, soil or water supplies, unsafe levels of mold, asbestos or asbestos-containing materials or other potentially hazardous or toxic substances on the Property; manufacture of methamphetamine or other hazardous or toxic substances on the Property; or high voltage electric (100 KV or greater) or steel natural gas transmission lines located on but not directly serving the Property.

**NOTE: Specific federal lead paint disclosure requirements must be complied with in the sale of most residential properties built before 1978.**

g.    Defects caused by unsafe concentrations of, unsafe conditions relating to, or the storage of, hazardous or toxic substances on neighboring properties.

h.    Property is served by a joint well; Defects related to a joint well serving the Property; or Defects in a well on the Property or in a well that serves the Property, including unsafe well water.

i.    A septic system or other private sanitary disposal system serves the Property; Defects in the septic system or other sanitary disposal system on the Property; or any out-of-service septic system serving the Property not closed or abandoned according to applicable regulations.

j.    Underground or aboveground fuel storage tanks on or previously located on the Property; or Defects in the underground or aboveground fuel storage tanks on or previously located on the Property. (The owner, by law, may have to register the tanks with the Department of Agriculture, Trade and Consumer Protection at P.O. Box 8911, Madison, Wisconsin, 53708, whether the tanks are in use or not. Department regulations may require closure or removal of unused tanks.)

k.    "LP" tank on the Property (specify in the additional information whether the tank is owned or leased); or Defects in an "LP" tank on the Property.

l.    Notice of property tax increases, other than normal annual increases, or pending Property reassessment; remodeling that may increase the Property's assessed value; pending special assessments; or Property is within a special purpose district, such as a drainage district, that has authority to impose assessments.

m.    Proposed construction of a public project that may affect use of the Property; Property additions or remodeling affecting Property structure or mechanical systems during Seller's ownership without required permits; or any land division involving the Property without required state or local permits.

n.    The Property is part of or subject to a subdivision homeowners' association; or the Property is not a condominium unit and there are common areas associated with the Property that are co-owned with others.

o.    Any zoning code violations with respect to the Property; the Property or any portion thereof is located in a floodplain, wetland or shoreland zoning area; or the Property is subject to a shoreland mitigation plan required by Wisconsin Department of Natural Resources (DNR) rules that obligates the Property owner to establish or maintain certain measures related to shoreland conditions, enforceable by the county.

p.    Nonconforming uses of the Property; conservation easements, restrictive covenants or deed restrictions on the Property; or, other than public rights of way, nonowners having rights to use part of the Property, including, but not limited to, private rights-of-way and easements other than recorded utility easements.

q.    All or part of the Property has been assessed as agricultural land; has been assessed a use-value assessment conversion charge; or payment of a use-value assessment conversion charge has been deferred.

r.    All or part of the Property is subject to, enrolled in, or in violation of a farmland preservation agreement, Forest Crop Law, Managed Forest Law, the Conservation Reserve Program, or a comparable program.

s.    A dam is totally or partially located on the Property; or an ownership interest in a dam not located on the Property will be transferred with the Property because the dam is owned by a homeowners' association, lake district, or similar group of which the Property owner is a member.

t.    No legal access to the Property; or boundary or lot line disputes, encroachments or encumbrances (including a joint driveway) affecting the Property.

u.    Federal, state, or local regulations requiring repairs, alterations or corrections of an existing condition; or any insurance claims relating to damage to the Property within the last five years.

v.    A pier attached to the Property not in compliance with state or local pier regulations; a written agreement affecting riparian rights related to the Property; or the bed of the abutting navigable waterway is owned by a hydroelectric operator.

w.    Current or previous termite, powder-post beetle or carpenter ant infestations or Defects caused by animal, reptile, or other insect infestations.

x.    Structure on the Property designated as an historic building; all or any part of the Property in an historic district; or one or more burial sites on the Property.

y.    Agreements binding subsequent owners such as a lease agreement or extension of credit from an electric cooperative.

z.    Owner is a foreign person as defined in the Foreign Investment in Real Property Tax Act in 26 IRC § 1445(f).

Package ID: E1428694DEEF283269AF0AE210C12618

Property Address: 3012 Willow Dr, La Crosse, WI 54601 _____ Page 4 of 11, WB-11

aa. Other Defects affecting the Property, including, without limitation, drainage easement or grading problems; or excessive sliding, settling, earth movement or upheavals.

**INSPECTIONS AND TESTING** Buyer may only conduct inspections or tests if specific contingencies are included as a part of this Offer. An "inspection" is defined as an observation of the Property, which does not include an appraisal or testing of the Property, other than testing for leaking carbon monoxide, or testing for leaking LP gas or natural gas used as a fuel source, which are hereby authorized. A "test" is defined as the taking of samples of materials such as soils, water, air or building materials from the Property for laboratory or other analysis of these materials. Seller agrees to allow Buyer's inspectors, testers and appraisers reasonable access to the Property upon advance notice, if necessary, to satisfy the contingencies in this Offer. Buyer or licensees or both may be present at all inspections and testing. Except as otherwise provided, Seller's authorization for inspections does not authorize Buyer to conduct testing of the Property.

**NOTE: Any contingency authorizing testing should specify the areas of the Property to be tested, the purpose of the test (e.g., to determine if environmental contamination is present), any limitations on Buyer's testing and any other material terms of the contingency.**

Buyer agrees to promptly restore the Property to its original condition after Buyer's inspections and testing are completed unless otherwise agreed to with Seller. Buyer agrees to promptly provide copies of all inspection and testing reports to Seller. Seller acknowledges that certain inspections or tests may detect environmental pollution which may be required to be reported to the Wisconsin Department of Natural Resources.

[ x ] **INSPECTION CONTINGENCY:** This contingency only authorizes inspections, not testing (see lines 178-192).

(1) This Offer is contingent upon a Wisconsin registered or Wisconsin licensed home inspector performing a home inspection of the Property after the date on line 1 of this Offer that discloses no Defects.

(2) This Offer is further contingent upon a qualified independent inspector or independent qualified third party performing an inspection of SEWER SCOPE _____

_____ (list any Property component(s) to be separately inspected, e.g., swimming pool, roof, foundation, chimney, etc.) which discloses no Defects.

(3) Buyer may have follow-up inspections recommended in a written report resulting from an authorized inspection, provided they occur prior to the Deadline specified at line 206. Inspection(s) shall be performed by a qualified independent inspector or independent qualified third party.

Buyer shall order the inspection(s) and be responsible for all costs of inspection(s).

**CAUTION: Buyer should provide sufficient time for the home inspection and/or any specialized inspection(s), as well as any follow-up inspection(s).**

This contingency shall be deemed satisfied unless Buyer, within __30__ days ("15" if left blank) after acceptance, delivers to Seller a copy of the written inspection report(s) dated after the date on line 1 of this Offer and a written notice listing the Defect(s) identified in those report(s) to which Buyer objects (Notice of Defects).

**CAUTION: A proposed amendment is not a Notice of Defects and will not satisfy this notice requirement.**

For the purposes of this contingency, Defects do not include structural, mechanical or other conditions the nature and extent of which Buyer had actual knowledge or written notice before signing this Offer.

**NOTE: "Defect" as defined on lines 445-447 means a condition that would have a significant adverse effect on the value of the Property; that would significantly impair the health or safety of future occupants of the Property; or that if not repaired, removed or replaced would significantly shorten or adversely affect the expected normal life of the premises.**

■ **RIGHT TO CURE:** Seller (shall)(shall not) **STRIKE ONE** ("shall" if neither is stricken) have the right to cure the Defects. If Seller has the right to cure, Seller may satisfy this contingency by:

(1) delivering written notice to Buyer within _____ ("10" if left blank) days after Buyer's delivery of the Notice of Defects stating Seller's election to cure Defects;

(2) curing the Defects in a good and workmanlike manner; and

(3) delivering to Buyer a written report detailing the work done no later than three days prior to closing.

This Offer shall be null and void if Buyer makes timely delivery of the Notice of Defects and written inspection report(s) and:

(1) Seller does not have the right to cure; or

(2) Seller has the right to cure but:

(a) Seller delivers written notice that Seller will not cure; or

(b) Seller does not timely deliver the written notice of election to cure.

[ NA ] **RADON TESTING CONTINGENCY:** This Offer is contingent upon Buyer obtaining a current written report of the results of a radon test at the Property performed by a qualified third party in a manner consistent with applicable Environmental Protection Agency (EPA) and Wisconsin Department of Health Services (DHS) protocols and standards indicating an EPA average radon level of less than 4.0 picoCuries per liter (pCi/L), at (Buyer's) (Seller's) **STRIKE ONE** ("Buyer's" if neither is stricken) expense.

This contingency shall be deemed satisfied unless Buyer, within _____ days ("20" if left blank) after acceptance delivers to Seller a written copy of the radon test results indicating a radon level of 4.0 pCi/L or higher and written notice objecting to the radon level in the report.

Package ID: E1428694DEEF283269AF0AE210C12618

DigiSign Verified - dbe69c35-d773-46a9-91c0-9e1c246c4085

Property Address: 3012 Willow Dr, La Crosse, WI  54601    Page 5 of 11, WB-11

**RIGHT TO CURE:** Seller (shall)(shall not) [STRIKE ONE] ("shall" if neither is stricken) have the right to cure.
If Seller has the right to cure, Seller may satisfy this contingency by:
 (1) delivering a written notice of Seller's election to cure within 10 days after delivery of Buyer's notice; and,
 (2) installing a radon mitigation system in conformance with EPA standards in a good and workmanlike manner and by
      giving Buyer a report of the work done and a post remediation test report indicating a radon level of less than 4.0 pCi/L
      no later than three days prior to closing.
This Offer shall be null and void if Buyer timely delivers the above written notice and report to Seller and:
 (1) Seller does not have the right to cure; or
 (2) Seller has the right to cure but:
      (a) Seller delivers written notice that Seller will not cure; or
      (b) Seller does not timely deliver the notice of election to cure.
**NOTE: For radon information refer to the EPA at epa.gov/radon or the DHS at dhs.wisconsin.gov/radon.**

                    **IF LINE 248 IS NOT MARKED OR IS MARKED N/A LINES 296-307 APPLY.**
[ x ] **FINANCING COMMITMENT CONTINGENCY:** This Offer is contingent upon Buyer being able to obtain a written
conventional_____ [loan type or specific lender, if any] first mortgage loan commitment as described
below, within ____45____ days after acceptance of this Offer. The financing selected shall be in an amount of not less than
$200,000.00_____ for a term of not less than ____30____ years, amortized over not less than ____30____ years. Initial
monthly payments of principal and interest shall not exceed $1,330.00_____ . Buyer acknowledges that lender's
required monthly payments may also include 1/12th of the estimated net annual real estate taxes, hazard insurance
premiums, and private mortgage insurance premiums. The mortgage shall not include a prepayment premium. Buyer agrees
to pay discount points in an amount not to exceed _____ % ("0" if left blank) of the loan. If Buyer is using multiple loan
sources or obtaining a construction loan or land contract financing, describe at lines 548-570 or in an addendum attached
per line 592. Buyer agrees to pay all customary loan and closing costs, wire fees, and loan origination fees, to promptly
apply for a mortgage loan, and to provide evidence of application promptly upon request of Seller. Seller agrees to allow
lender's appraiser access to the Property.
**LOAN AMOUNT ADJUSTMENT**: If the purchase price under this Offer is modified, any financed amount, unless otherwise
provided, shall be adjusted to the same percentage of the purchase price as in this contingency and the monthly payments
shall be adjusted as necessary to maintain the term and amortization stated above.
**CHECK AND COMPLETE APPLICABLE FINANCING PROVISION AT LINE 264 or 265.**
[X] **FIXED RATE FINANCING:** The annual rate of interest shall not exceed ____7.000____%.
[ ] **ADJUSTABLE RATE FINANCING:** The initial interest rate shall not exceed _____%. The initial interest rate
shall be fixed for _____ months, at which time the interest rate may be increased not more than _____% ("2" if
left blank) at the first adjustment and by not more than _____% ("1" if left blank) at each subsequent adjustment.
The maximum interest rate during the mortgage term shall not exceed the initial interest rate plus _____% ("6" if
left blank). Monthly payments of principal and interest may be adjusted to reflect interest changes.
**SATISFACTION OF FINANCING COMMITMENT CONTINGENCY**: If Buyer qualifies for the loan described in this Offer
or another loan acceptable to Buyer, Buyer agrees to deliver to Seller a copy of a written loan commitment.
This contingency shall be satisfied if, after Buyer's review, Buyer delivers to Seller a copy of a written loan commitment
(even if subject to conditions) that is:
 (1) signed by Buyer; or
 (2) accompanied by Buyer's written direction for delivery.
Delivery of a loan commitment by Buyer's lender or delivery accompanied by a notice of unacceptability shall not satisfy
this contingency.
**CAUTION: The delivered loan commitment may contain conditions Buyer must yet satisfy to obligate the lender to
provide the loan. Buyer understands delivery of a loan commitment removes the Financing Commitment
Contingency from the Offer and shifts the risk to Buyer if the loan is not funded.**
**SELLER TERMINATION RIGHTS**: If Buyer does not deliver a loan commitment on or before the Deadline on line 250.
Seller may terminate this Offer if Seller delivers a written notice of termination to Buyer prior to Seller's Actual Receipt of
written loan commitment from Buyer.
**FINANCING COMMITMENT UNAVAILABILITY**: If a financing commitment is not available on the terms stated in this
Offer (and Buyer has not already delivered an acceptable loan commitment for other financing to Seller), Buyer shall
promptly deliver written notice to Seller of same including copies of lender(s)' rejection letter(s) or other evidence of
unavailability.
[ NA ] **SELLER FINANCING:** Seller shall have 10 days after the earlier of:
 (1) Buyer delivery of written notice of evidence of unavailability as noted in lines 284-287; or
 (2) the Deadline for delivery of the loan commitment set on line 250
to deliver to Buyer written notice of Seller's decision to finance this transaction with a note and mortgage under the same
terms set forth in this Offer, and this Offer shall remain in full force and effect, with the time for closing extended accordingly.
If Seller's notice is not timely given, the option for Seller to provide financing shall be considered waived. Buyer agrees to
cooperate with and authorizes Seller to obtain any credit information reasonably appropriate to determine Buyer's credit
worthiness for Seller financing.

Property Address: 3012 Willow Dr, La Crosse, WI  54601 _____ Page 6 of 11, WB-11

**IF THIS OFFER IS NOT CONTINGENT ON FINANCING COMMITMENT** Within _____ days ("7" if left blank) after acceptance, Buyer shall deliver to Seller either:

(1) reasonable written verification from a financial institution or third party in control of Buyer's funds that Buyer has, at the time of verification, sufficient funds to close; or

(2) _____

_____ [Specify documentation Buyer agrees to deliver to Seller].

If such written verification or documentation is not delivered, Seller has the right to terminate this Offer by delivering written notice to Buyer prior to Seller's Actual Receipt of a copy of Buyer's written verification. Buyer may or may not obtain mortgage financing but does not need the protection of a financing commitment contingency. Seller agrees to allow Buyer's appraiser access to the Property for purposes of an appraisal. Buyer understands and agrees that this Offer is not subject to the appraisal meeting any particular value, unless this Offer is subject to an appraisal contingency, nor does the right of access for an appraisal constitute a financing commitment contingency.

**[ X ] APPRAISAL CONTINGENCY:** This Offer is contingent upon Buyer or Buyer's lender having the Property appraised at Buyer's expense by a Wisconsin licensed or certified independent appraiser who issues an appraisal report dated subsequent to the date stated on line 1 of this Offer, indicating an appraised value for the Property equal to or greater than the agreed upon purchase price.

This contingency shall be deemed satisfied unless Buyer, within _____ days after acceptance, delivers to Seller a copy of the appraisal report indicating an appraised value less than the agreed upon purchase price, and a written notice objecting to the appraised value.

**■ RIGHT TO CURE:** Seller (shall)(shall not) **STRIKE ONE** ("shall" if neither is stricken) have the right to cure.

If Seller has the right to cure, Seller may satisfy this contingency by delivering written notice to Buyer adjusting the purchase price to the value shown on the appraisal report within _____ days ("5" if left blank) after Buyer's delivery of the appraisal report and the notice objecting to the appraised value. Seller and Buyer agree to promptly execute an amendment initiated by either Party after delivery of Seller's notice, solely to reflect the adjusted purchase price.

This Offer shall be null and void if Buyer makes timely delivery of the notice objecting to appraised value and the written appraisal report and:

(1) Seller does not have the right to cure; or

(2) Seller has the right to cure but:

(a) Seller delivers written notice that Seller will not adjust the purchase price; or

(b) Seller does not timely deliver the written notice adjusting the purchase price to the value shown on the appraisal report.

**NOTE: An executed FHA, VA or USDA Amendatory clause may supersede this contingency.**

**[ NA ] CLOSING OF BUYER'S PROPERTY CONTINGENCY:** This Offer is contingent upon the closing of the sale of Buyer's property located at _____ no later than _____ (the Deadline). If closing does not occur by the Deadline, this Offer shall become null and void unless Buyer delivers to Seller, on or before the Deadline, reasonable written verification from a financial institution or third party in control of Buyer's funds that Buyer has, at the time of verification, sufficient funds to close or proof of bridge loan financing, along with a written notice waiving this contingency. Delivery of verification or proof of bridge loan shall not extend the closing date for this Offer.

**[ NA ] BUMP CLAUSE:** If Seller accepts a bona fide secondary offer, Seller may give written notice to Buyer that another offer has been accepted. If Buyer does not deliver to Seller the documentation listed below within _____ hours ("72" if left blank) after Buyer's Actual Receipt of said notice, this Offer shall be null and void. Buyer must deliver the following:

(1) Written waiver of the Closing of Buyer's Property Contingency if line 328 is marked;

(2) Written waiver of _____

_____ (name other contingencies, if any); and

(3) Any of the following checked below:

[ ] Proof of bridge loan financing.

[ ] Proof of ability to close from a financial institution or third party in control of Buyer's funds which shall provide Seller with reasonable written verification that Buyer has, at the time of verification, sufficient funds to close.

Other: _____

_____

[insert other requirements, if any (e.g., payment of additional earnest money, etc.)]

**[ NA ] SECONDARY OFFER:** This Offer is secondary to a prior accepted offer. This Offer shall become primary upon delivery of written notice to Buyer that this Offer is primary. Unless otherwise provided, Seller is not obligated to give Buyer notice prior to any Deadline, nor is any particular secondary buyer given the right to be made primary ahead of other secondary buyers. Buyer may declare this Offer null and void by delivering written notice of withdrawal to Seller prior to delivery of Seller's notice that this Offer is primary. Buyer may not deliver notice of withdrawal earlier than _____ days ("7" if left blank) after acceptance of this Offer. All other Offer Deadlines that run from acceptance shall run from the time this Offer becomes primary.

**HOMEOWNERS ASSOCIATION** If this Property is subject to a homeowners association, Buyer is aware the Property may be subject to periodic association fees after closing and one-time fees resulting from transfer of the Property. Any one-time

DigiSign Verified - dbe69c35-d773-46a9-91c0-0efc246c4085

Property Address: 3012 Willow Dr, La Crosse, WI  54601 _____ Page 7 of 11, WB-11

fees resulting from transfer of the Property shall be paid at closing by (Seller) (Buyer) **STRIKE ONE** ("Buyer" if neither is stricken).

**CLOSING PRORATIONS** The following items, if applicable, shall be prorated at closing, based upon date of closing values: real estate taxes, rents, prepaid insurance (if assumed), private and municipal charges, property owners or homeowners association assessments, fuel and _____

_____ .

**CAUTION: Provide basis for utility charges, fuel or other prorations if date of closing value will not be used.**
Any income, taxes or expenses shall accrue to Seller, and be prorated at closing, through the day prior to closing.
Real estate taxes shall be prorated at closing based on **CHECK BOX FOR APPLICABLE PRORATION FORMULA**:

☒ The net general real estate taxes for the preceding year, or the current year if available (Net general real estate taxes are defined as general property taxes after state tax credits and lottery credits are deducted). NOTE: THIS CHOICE APPLIES IF NO BOX IS CHECKED.

☐ Current assessment times current mill rate (current means as of the date of closing).

☐ Sale price, multiplied by the municipality area-wide percent of fair market value used by the assessor in the prior year, or current year if known, multiplied by current mill rate (current means as of the date of closing).

☐ _____ .

**CAUTION: Buyer is informed that the actual real estate taxes for the year of closing and subsequent years may be substantially different than the amount used for proration especially in transactions involving new construction, extensive rehabilitation, remodeling or area-wide re-assessment. Buyer is encouraged to contact the local assessor regarding possible tax changes.**

☐ Buyer and Seller agree to re-prorate the real estate taxes, through the day prior to closing based upon the taxes on the actual tax bill for the year of closing, with Buyer and Seller each owing his or her pro-rata share. Buyer shall, within 5 days of receipt, forward a copy of the bill to the forwarding address Seller agrees to provide at closing. The Parties shall re-prorate within 30 days of Buyer's receipt of the actual tax bill. Buyer and Seller agree this is a post-closing obligation and is the responsibility of the Parties to complete, not the responsibility of the real estate Firms in this transaction.

**TITLE EVIDENCE**
■ CONVEYANCE OF TITLE: **Upon payment of the purchase price, Seller shall convey the Property by warranty deed (trustee's deed if Seller is a trust, personal representative's deed if Seller is an estate or other conveyance as provided herein),** free and clear of all liens and encumbrances, except: municipal and zoning ordinances and agreements entered under them, recorded easements for the distribution of utility and municipal services, recorded building and use restrictions and covenants, present uses of the Property in violation of the foregoing disclosed in Seller's Real Estate Condition Report and in this Offer, general taxes levied in the year of closing and _____

_____ (insert other allowable exceptions from title, if any) that constitutes merchantable title for purposes of this transaction. Seller, at Seller's cost, shall complete and execute the documents necessary to record the conveyance and pay the Wisconsin Real Estate Transfer Fee.

**WARNING: Municipal and zoning ordinances, recorded building and use restrictions, covenants and easements may prohibit certain improvements or uses and therefore should be reviewed, particularly if Buyer contemplates making improvements to Property or a use other than the current use.**

■ TITLE EVIDENCE: Seller shall give evidence of title in the form of an owner's policy of title insurance in the amount of the purchase price on a current ALTA form issued by an insurer licensed to write title insurance in Wisconsin. Seller shall pay all costs of providing title evidence to Buyer. Buyer shall pay the costs of providing the title evidence required by Buyer's lender and recording the deed or other conveyance.

■ GAP ENDORSEMENT: Seller shall provide a "gap" endorsement or equivalent gap coverage at (Seller's)(Buyer's) **STRIKE ONE** ("Seller's" if neither stricken) cost to provide coverage for any liens or encumbrances first filed or recorded after the commitment date of the title insurance commitment and before the deed is recorded, subject to the title insurance policy conditions, exclusions and exceptions, provided the title company will issue the coverage. If a gap endorsement or equivalent gap coverage is not available, Buyer may give written notice that title is not acceptable for closing (see lines 410-415).

■ DELIVERY OF MERCHANTABLE TITLE: The required title insurance commitment shall be delivered to Buyer's attorney or Buyer not less than 5 business days before closing, showing title to the Property as of a date no more than 15 days before delivery of such title evidence to be merchantable per lines 383-391, subject only to liens that will be paid out of the proceeds of closing and standard title insurance requirements and exceptions.

■ TITLE NOT ACCEPTABLE FOR CLOSING: If title is not acceptable for closing, Buyer shall notify Seller in writing of objections to title by the time set for closing. Seller shall have a reasonable time, but not exceeding 15 days, to remove the objections, and the time for closing shall be extended as necessary for this purpose. If Seller is unable to remove said objections, Buyer shall have five days from receipt of notice thereof, to deliver written notice waiving the objections, and the time for closing shall be extended accordingly. If Buyer does not waive the objections, this Offer shall be null and void. Providing title evidence acceptable for closing does not extinguish Seller's obligations to give merchantable title to Buyer.

■ SPECIAL ASSESSMENTS/OTHER EXPENSES: Special assessments, if any, levied or for work actually commenced prior to the date stated on line 1 of this Offer shall be paid by Seller no later than closing. All other special assessments

Package ID: E1428694DEEF283269AF0AE210C12618

Property Address: 3012 Willow Dr, La Crosse, WI  54601                                                    Page 8 of 11, WB-11

shall be paid by Buyer. "Levied" means the local municipal governing body has adopted and published a final resolution describing the planned improvements and the assessment of benefits.

**CAUTION: Consider a special agreement if area assessments, property owners association assessments, special charges for current services under Wis. Stat. § 66.0627 or other expenses are contemplated. "Other expenses" are one-time charges or ongoing use fees for public improvements (other than those resulting in special assessments) relating to curb, gutter, street, sidewalk, municipal water, sanitary and storm water and storm sewer (including all sewer mains and hook-up/connection and interceptor charges), parks, street lighting and street trees, and impact fees for other public facilities, as defined in Wis. Stat. § 66.0617(1)(f).**

**LEASED PROPERTY** If Property is currently leased and lease(s) extend beyond closing, Seller shall assign Seller's rights under said lease(s) and transfer all security deposits and prepaid rents thereunder to Buyer at closing. The terms of the (written) (oral) **STRIKE ONE** lease(s), if any, are _____

_____

_____. Insert additional terms, if any, at lines 548-570 or attach as an addendum per line 592.

**DEFINITIONS**

■ ACTUAL RECEIPT: "Actual Receipt" means that a Party, not the Party's recipient for delivery, if any, has the document or written notice physically in the Party's possession, regardless of the method of delivery. If the document or written notice is electronically delivered, Actual Receipt shall occur when the Party opens the electronic transmission.

■ BUSINESS DAY: "Business Day" means a calendar day other than Saturday, Sunday, any legal public holiday under Wisconsin or Federal law, and any other day designated by the President such that the postal service does not receive registered mail or make regular deliveries on that day.

■ DEADLINES: "Deadlines" expressed as a number of "days" from an event, such as acceptance, are calculated by excluding the day the event occurred and by counting subsequent calendar days. The Deadline expires at Midnight on the last day. Additionally, Deadlines expressed as a specific number of Business Days are calculated in the same manner except that only Business Days are counted while other days are excluded. Deadlines expressed as a specific number of "hours" from the occurrence of an event, such as receipt of a notice, are calculated from the exact time of the event, and by counting 24 hours per calendar day. Deadlines expressed as a specific day of the calendar year or as the day of a specific event, such as closing, expire at Midnight of that day. "Midnight" is defined as 11:59 p.m. Central Time.

■ DEFECT: "Defect" means a condition that would have a significant adverse effect on the value of the Property; that would significantly impair the health or safety of future occupants of the Property; or that if not repaired, removed or replaced would significantly shorten or adversely affect the expected normal life of the premises.

■ FIRM: "Firm" means a licensed sole proprietor broker or a licensed broker business entity.

■ PARTY: "Party" means the Buyer or the Seller; "Parties" refers to both Buyer and Seller.

■ PROPERTY: Unless otherwise stated, "Property" means the real estate described at lines 4-8.

**INCLUSION OF OPTIONAL PROVISIONS** Terms of this Offer that are preceded by an OPEN BOX ( [___] ) are part of this offer ONLY if the box is marked such as with an "X". They are not part of this offer if marked "N/A" or are left blank.

**PROPERTY DIMENSIONS AND SURVEYS** Buyer acknowledges that any land, building or room dimensions, or total acreage or building square footage figures, provided to Buyer by Seller or by a Firm or its agents, may be approximate because of rounding, formulas used or other reasons, unless verified by survey or other means.

**CAUTION: Buyer should verify total square footage formula, total square footage/acreage figures, and land, building or room dimensions, if material.**

**DISTRIBUTION OF INFORMATION** Buyer and Seller authorize the agents of Buyer and Seller to: (i) distribute copies of the Offer to Buyer's lender, appraisers, title insurance companies and any other settlement service providers for the transaction as defined by the Real Estate Settlement Procedures Act (RESPA); (ii) report sales and financing concession data to multiple listing service sold databases; (iii) provide active listing, pending sale, closed sale and financing concession information and data, and related information regarding seller contributions, incentives or assistance, and third party gifts, to appraisers researching comparable sales, market conditions and listings, upon inquiry; and (iv) distribute copies of this Offer to the seller, or seller's agent, of another property that Seller intends on purchasing.

**MAINTENANCE** Seller shall maintain the Property and all personal property included in the purchase price until the earlier of closing or Buyer's occupancy, in materially the same condition it was in as of the date on line 1 of this Offer, except for ordinary wear and tear and changes agreed upon by Parties.

**PROPERTY DAMAGE BETWEEN ACCEPTANCE AND CLOSING** If, prior to closing, the Property is damaged in an amount not more than five percent of the purchase price, other than normal wear and tear, Seller shall promptly notify Buyer in writing, and will be obligated to restore the Property to materially the same condition it was in as of the date on line 1 of this Offer. Seller shall provide Buyer with copies of all required permits and lien waivers for the lienable repairs no later than closing. If the amount of damage exceeds five percent of the purchase price, Seller shall promptly notify Buyer in writing of the damage and this Offer may be terminated at option of Buyer. Should Buyer elect to carry out this Offer despite such damage, Buyer shall be entitled to the insurance proceeds, if any, relating to the damage to the Property, plus a credit towards the purchase price equal to the amount of Seller's deductible on such policy, if any. However, if this sale is financed by a land contract or a mortgage to Seller, any insurance proceeds shall be held in trust for the sole purpose of restoring

Package ID: E1428694DEEF283269AF0AE210C12618

DigiSign Verified - dbe69c35-d773-46a9-91c0-0efc248c4085

Property Address: <u>3012 Willow Dr, La Crosse, WI  54601</u>                                                          Page 9 of 11, WB-11

the Property.

**BUYER'S PRE-CLOSING WALK-THROUGH** Within three days prior to closing, at a reasonable time pre-approved by Seller or Seller's agent, Buyer shall have the right to walk through the Property to determine that there has been no significant change in the condition of the Property, except for ordinary wear and tear and changes agreed upon by Parties, and that any defects Seller has agreed to cure have been repaired in the manner agreed to by the Parties.

**OCCUPANCY** Occupancy of the entire Property shall be given to Buyer at time of closing unless otherwise provided in this Offer at lines 548-570 or in an addendum attached per line 592, or lines 426-430 if the Property is leased. At time of Buyer's occupancy, Property shall be in broom swept condition and free of all debris, refuse, and personal property except for personal property belonging to current tenants, or sold to Buyer or left with Buyer's consent. Occupancy shall be given subject to tenant's rights, if any.

**DEFAULT** Seller and Buyer each have the legal duty to use good faith and due diligence in completing the terms and conditions of this Offer. A material failure to perform any obligation under this Offer is a default that may subject the defaulting party to liability for damages or other legal remedies.

If <u>Buyer defaults</u>, Seller may:

(1) sue for specific performance and request the earnest money as partial payment of the purchase price; or

(2) terminate the Offer and have the option to: (a) request the earnest money as liquidated damages; or (b) sue for actual damages.

If <u>Seller defaults</u>, Buyer may:

(1) sue for specific performance; or

(2) terminate the Offer and request the return of the earnest money, sue for actual damages, or both.

In addition, the Parties may seek any other remedies available in law or equity. The Parties understand that the availability of any judicial remedy will depend upon the circumstances of the situation and the discretion of the courts. If either Party defaults, the Parties may renegotiate the Offer or seek nonjudicial dispute resolution instead of the remedies outlined above. By agreeing to binding arbitration, the Parties may lose the right to litigate in a court of law those disputes covered by the arbitration agreement.

**NOTE: IF ACCEPTED, THIS OFFER CAN CREATE A LEGALLY ENFORCEABLE CONTRACT. BOTH PARTIES SHOULD READ THIS DOCUMENT CAREFULLY. THE FIRM AND ITS AGENTS MAY PROVIDE A GENERAL EXPLANATION OF THE PROVISIONS OF THE OFFER BUT ARE PROHIBITED BY LAW FROM GIVING ADVICE OR OPINIONS CONCERNING YOUR LEGAL RIGHTS UNDER THIS OFFER OR HOW TITLE SHOULD BE TAKEN AT CLOSING. AN ATTORNEY SHOULD BE CONSULTED IF LEGAL ADVICE IS NEEDED.**

**ENTIRE CONTRACT** This Offer, including any amendments to it, contains the entire agreement of the Buyer and Seller regarding the transaction. All prior negotiations and discussions have been merged into this Offer. This agreement binds and inures to the benefit of the Parties to this Offer and their successors in interest.

**NOTICE ABOUT SEX OFFENDER REGISTRY** You may obtain information about the sex offender registry and persons registered with the registry by contacting the Wisconsin Department of Corrections on the Internet at http://www.doc.wi.gov or by telephone at (608) 240-5830.

**FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT (FIRPTA)** Section 1445 of the Internal Revenue Code (IRC) provides that a transferee (Buyer) of a United States real property interest must pay or withhold as a tax up to 15% of the total "Amount Realized" in the sale if the transferor (Seller) is a "Foreign Person" and no exception from FIRPTA withholding applies. A "Foreign Person" is a nonresident alien individual, foreign corporation, foreign partnership, foreign trust, or foreign estate. The "Amount Realized" is the sum of the cash paid, the fair market value of other property transferred, and the amount of any liability assumed by Buyer.

**CAUTION: Under this law if Seller is a Foreign Person, and Buyer does not pay or withhold the tax amount, Buyer may be held directly liable by the U.S. Internal Revenue Service for the unpaid tax and a tax lien may be placed upon the Property.**

Seller hereby represents that Seller is a non-Foreign Person, unless (1) Seller represents Seller is a Foreign Person in a condition report incorporated in this Offer per lines 105-108, or (2) no later than 10 days after acceptance, Seller delivers notice to Buyer that Seller is a Foreign Person, in which cases the provisions on lines 530-532 apply.

**IF SELLER IS A NON-FOREIGN PERSON.** Seller shall, no later than closing, execute and deliver to Buyer, or a qualified substitute (attorney or title company as stated in IRC § 1445), a sworn certification under penalties of perjury of Seller's non-foreign status in accordance with IRC § 1445. If Seller fails to timely deliver certification of Seller's non-foreign status, Buyer shall: (1) withhold the amount required to be withheld pursuant to IRC § 1445; or, (2) declare Seller in default of this Offer and proceed under lines 494-501.

**IF SELLER IS A FOREIGN PERSON.** If Seller has represented that Seller is a Foreign Person, Buyer shall withhold the amount required to be withheld pursuant to IRC § 1445 at closing unless the Parties have amended this Offer regarding amounts to be withheld, any withholding exemption to be applied, or other resolution of this provision.

**COMPLIANCE WITH FIRPTA.** Buyer and Seller shall complete, execute, and deliver, on or before closing, any instrument, affidavit, or statement needed to comply with FIRPTA, including withholding forms. If withholding is required under IRC § 1445, and the net proceeds due Seller are not sufficient to satisfy the withholding required in this transaction, Seller shall

Package ID: E1428694DEEF283269AF0AE210C12618

Property Address: 3012 Willow Dr, La Crosse, WI  54601                                                          Page 10 of 11, WB-11

deliver to Buyer, at closing, the additional funds necessary to satisfy the applicable withholding requirement. Seller also shall pay to Buyer an amount not to exceed $1,000 for actual costs associated with the filing and administration of forms, affidavits, and certificates necessary for FIRPTA withholding and any withholding agent fees.

**Any representations made by Seller with respect to FIRPTA shall survive the closing and delivery of the deed.**

Firms, Agents, and Title Companies are not responsible for determining FIRPTA status or whether any FIRPTA exemption applies. The Parties are advised to consult with their respective independent legal counsel and tax advisors regarding FIRPTA.

[ X ] **SELLER PAYMENT OF COMPENSATION TO BUYER'S FIRM:** Seller agrees to pay to Buyer's Firm the amount of 2.4 _____ (e.g., dollar amount, % of purchase price, etc.), toward Buyer's brokerage fees at closing. Payment made under this provision represents an economic adjustment only and does not create any agency relationship between Buyer's Firm and Seller, and the Parties agree Buyer's Firm is a direct and intended third party beneficiary of this contract.

**ADDITIONAL PROVISIONS/CONTINGENCIES**

CLOSING TO BE ON OR BEFORE MARCH 31.

Seller shall have fourteen (14) days from Acceptance to identify a replacement property for purchase. In the event Seller fails to identify a property within said fourteen (14) day period, this Offer shall be null and void and Buyer's earnest money shall be returned to Buyer in full without deduction.

**DELIVERY OF DOCUMENTS AND WRITTEN NOTICES** Unless otherwise stated in this Offer, delivery of documents and written notices to a Party shall be effective only when accomplished by one of the authorized methods specified at lines 574-589.

(1) Personal: giving the document or written notice personally to the Party, or the Party's recipient for delivery if named at line 576 or 577.

Name of Seller's recipient for delivery, if any: _____

Name of Buyer's recipient for delivery, if any: _____

[ ] (2) Fax: fax transmission of the document or written notice to the following number:

Seller: (_____) _____ Buyer: (_____) _____

[ ] (3) Commercial: depositing the document or written notice, fees prepaid or charged to an account, with a commercial delivery service, addressed either to the Party, or to the Party's recipient for delivery, for delivery to the Party's address at line 585 or 586.

[ ] (4) U.S. Mail: depositing the document or written notice, postage prepaid, in the U.S. Mail, addressed either to the Party, or to the Party's recipient for delivery, for delivery to the Party's address.

Address for Seller: _____

Address for Buyer: _____

[ X ] (5) Email: electronically transmitting the document or written notice to the email address.

Email Address for Seller: miranda@nhprimewi.com

Email Address for Buyer: MKKLUG14@GMAIL.COM

**PERSONAL DELIVERY/ACTUAL RECEIPT** Personal delivery to, or Actual Receipt by, any named Buyer or Seller constitutes personal delivery to, or Actual Receipt by, all Buyers or Sellers.

[ X ] **ADDENDA:** The attached _____ RECR, S, _____ is/are made part of this Offer.

This Offer was drafted by [Licensee and Firm] _____ Hayden Schmidt, eXp Realty LLC _____

Package ID: E1428694DEEF283269AF0AE210C12618

Property Address: <u>3012 Willow Dr, La Crosse, WI  54601</u>                                    Page 11 of 11, WB-11

┌─────────────────────────────────────────────────────────────────────────────────────────┐
│ **WIRE FRAUD WARNING!** Wire Fraud is a real and serious risk. Never trust wiring instructions │
│ sent via email. Funds wired to a fraudulent account are often impossible to recover. │
│ │
│ Criminals are hacking emails and sending fake wiring instructions by impersonating a real estate │
│ agent, Firm, lender, title company, attorney or other source connected to your transaction. These │
│ communications are convincing and professional in appearance but are created to steal your │
│ money. The fake wiring instructions may even be mistakenly forwarded to you by a legitimate │
│ source. │
│ │
│ DO NOT initiate ANY wire transfer until you confirm wiring instructions IN PERSON or by YOU │
│ calling a verified number of the entity involved in the transfer of funds. Never use contact │
│ information provided by any suspicious communication. │
│ │
│ **Real estate agents and Firms ARE NOT responsible for the transmission, forwarding, or** │
│ **verification of any wiring or money transfer instructions.** │
└─────────────────────────────────────────────────────────────────────────────────────────┘

*Marcus Klug*

(x) _____     01/28/2026

Buyer's Signature ▲ Print Name Here ▶ Marcus Klug                  Date ▲

(x) *Kate Klug*                                              01/28/2026

Buyer's Signature ▲ Print Name Here ▶ Kate Klug                   Date ▲

**SELLER ACCEPTS THIS OFFER. THE WARRANTIES, REPRESENTATIONS AND COVENANTS MADE IN THIS OFFER SURVIVE CLOSING AND THE CONVEYANCE OF THE PROPERTY. SELLER AGREES TO CONVEY THE PROPERTY ON THE TERMS AND CONDITIONS AS SET FORTH HEREIN AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS OFFER.**

(x) _____     Jan 28, 2026

Seller's Signature ▲ Print Name Here ▶   *Tammy Volden*              Date ▲

(x) *Shawn Volden*                                         Jan 28, 2026

Seller's Signature ▲ Print Name Here ▶   *Shawn Volden*              Date ▲

This Offer was presented to Seller by [Licensee and Firm] _____ *Miranda Knight  NextHome Prime Real Estate* _____

_____ on _____ *Jan 28, 2026* _____ at _____ *9:00* _____ a.m./p.m.

This Offer is rejected _____ _____ This Offer is countered [See attached counter] _____

Seller Initials ▲ Date ▲                                    Seller Initials ▲ Date ▲

 **CHICAGO TITLE INSURANCE COMPANY**

**EXHIBIT A**
**LEGAL DESCRIPTION**

Lot 19 and the North 20 feet of the West 60 feet of Lot 18 of Cliffside Park Addition to the Town of Shelby, now in the City of La Crosse, La Crosse County, Wisconsin.



*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

ALTA Commitment for Title Insurance (7-1-21) w-WI Mod

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

 AMERICAN LAND TITLE ASSOCIATION

 **CHICAGO TITLE INSURANCE COMPANY**

**ALTA COMMITMENT FOR TITLE INSURANCE**
**issued by**
**CHICAGO TITLE INSURANCE COMPANY**

**NOTICE**

**IMPORTANT—READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

**COMMITMENT TO ISSUE POLICY**

Subject to the Notice; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and the Commitment Conditions, Chicago Title Insurance Company, a Florida corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Amount of Insurance and the name of the Proposed Insured.

If all of the Schedule B, Part I—Requirements have not been met within 180 days after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

CHICAGO TITLE INSURANCE COMPANY

By:

Michael J. Nolan, President

ATTEST:

Marjorie Nemzura, Secretary

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

72C170B4800                                                   ALTA Commitment for Title Insurance (7-1-21) w-WI Mod

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.





AMERICAN
LAND TITLE
ASSOCIATION

 **CHICAGO TITLE INSURANCE COMPANY**

### COMMITMENT CONDITIONS

1. **DEFINITIONS**
   a. "Discriminatory Covenant": Any covenant, condition, restriction, or limitation that is unenforceable under applicable law because it illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.
   b. "Knowledge" or "Known": Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.
   c. "Land": The land described in Item 5 of Schedule A and improvements located on that land that by State law constitute real property. The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
   d. "Mortgage": A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.
   e. "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
   f. "Proposed Amount of Insurance": Each dollar amount specified in Schedule A as the Proposed Amount of Insurance of each Policy to be issued pursuant to this Commitment.
   g. "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.
   h. "Public Records": The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.
   i. "State": The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.
   j. "Title": The estate or interest in the Land identified in Item 3 of Schedule A.

2. If all of the Schedule B, Part I—Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   a. the Notice;
   b. the Commitment to Issue Policy;
   c. the Commitment Conditions;
   d. Schedule A;
   e. Schedule B, Part I—Requirements; and
   f. Schedule B, Part II—Exceptions; and
   g. a counter-signature by the Company or its issuing agent that may be in electronic form.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

72C170B4800                                                           ALTA Commitment for Title Insurance (7-1-21) w-WI Mod

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



 **CHICAGO TITLE INSURANCE COMPANY**

**4.    COMPANY'S RIGHT TO AMEND**

The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company is not liable for any other amendment to this Commitment.

**5.    LIMITATIONS OF LIABILITY**

a.    The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
   i.    comply with the Schedule B, Part I—Requirements;
   ii.   eliminate, with the Company's written consent, any Schedule B, Part II—Exceptions; or
   iii.  acquire the Title or create the Mortgage covered by this Commitment.

b.    The Company is not liable under Commitment Condition 5.a. if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.

c.    The Company is only liable under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.

d.    The Company's liability does not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Condition 5.a. or the Proposed Amount of Insurance.

e.    The Company is not liable for the content of the Transaction Identification Data, if any.

f.    The Company is not obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I—Requirements have been met to the satisfaction of the Company.

g.    The Company's liability is further limited by the terms and provisions of the Policy to be issued to the Proposed Insured.

**6.    LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT; CHOICE OF LAW AND CHOICE OF FORUM**

a.    Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

b.    Any claim must be based in contract under the State law of the State where the Land is located and is restricted to the terms and provisions of this Commitment. Any litigation or other proceeding brought by the Proposed Insured against the Company must be filed only in a State or federal court having jurisdiction.

c.    This Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

d.    The deletion or modification of any Schedule B, Part II—Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

e.    Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

f.    When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

72C170B4800                                                                          ALTA Commitment for Title Insurance (7-1-21) w-WI Mod

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

 **CHICAGO TITLE INSURANCE COMPANY**

**7.** IF THIS COMMITMENT IS ISSUED BY AN ISSUING AGENT
The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for closing, settlement, escrow, or any other purpose.

**8.** PRO-FORMA POLICY
The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

**9.** CLAIMS PROCEDURES
This Commitment incorporates by reference all Conditions for making a claim in the Policy to be issued to the Proposed Insured. Commitment Condition 9 does not modify the limitations of liability in Commitment Conditions 5 and 6.

**10.** CLASS ACTION
ALL CLAIMS AND DISPUTES ARISING OUT OF OR RELATING TO THIS COMMITMENT, INCLUDING ANY SERVICE OR OTHER MATTER IN CONNECTION WITH ISSUING THIS COMMITMENT, ANY BREACH OF A COMMITMENT PROVISION, OR ANY OTHER CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTION GIVING RISE TO THIS COMMITMENT, MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY. NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS OR REPRESENTATIVE PROCEEDING. ANY POLICY ISSUED PURSUANT TO THIS COMMITMENT WILL CONTAIN A CLASS ACTION CONDITION.

**11.** ARBITRATION – INTENTIONALLY DELETED

---

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

72C170B4800                                                                 ALTA Commitment for Title Insurance (7-1-21) w-WI Mod

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.


AMERICAN LAND TITLE ASSOCIATION

 **CHICAGO TITLE INSURANCE COMPANY**

**Transaction Identification Data, for which the Company assumes no liability as set forth in Commitment Condition 5.e.:**
Issuing Agent:   New Castle Title of La Crosse, Inc.
Issuing Office:   750 N. 3rd Street, Suite B
                La Crosse, WI 54601
Issuing Office's ALTA® Registry ID: 1053482
Loan ID Number:
Commitment Number: 26-WI-107025
Issuing Office File Number: 26-WI-107025
Property Address: 3012-3014 Willow Drive, La Crosse, WI 54601
Revision Number:

## SCHEDULE A

1.   Commitment Date: February 19, 2026 at 8:00 AM

2.   Policy to be issued:

   a.   2021 ALTA Owner's Policy
        Proposed Insured: Marcus Klug and Kate Klug
        Proposed Amount of Insurance: $235,000.00
        The estate or interest to be insured: fee simple

   b.   2021 ALTA Loan Policy
        Proposed Insured: State Bank Financial, Its Successors And/Or Assigns
        Proposed Amount of Insurance: $176,250.00
        The estate or interest to be insured: fee simple

3.   The estate or interest in the Land at the Commitment Date is: fee simple

4.   The Title is, at the Commitment Date, vested in: Tammy A. Hass, debtor in possession under Case No. 1-22-10843-cjf, United States Bankruptcy Court, Western District, State of Wisconsin

5.   The Land is described as follows: See Exhibit A attached hereto and made a part hereof.

   Tax Parcel No. 17-50198-080
   The 2022 taxes are in the amount of $3,821.97, with First Dollar Credit of $65.35, Lottery Credit of $214.51 and Delinquent Charges of $789.60, for net balance of $4,331.71, which are DELINQUENT AND SUBJECT TO PENALTY AND INTEREST.

   The 2023 taxes are in the amount of $4,030.04, with First Dollar Credit of $71.48, Lottery Credit of $266.06 and Delinquent Charges of $823.92, for net balance of $4,516.42, which are DELINQUENT AND SUBJECT TO PENALTY AND INTEREST.

   The 2024 taxes are in the amount of $4,114.75, with First Dollar Credit of $65.96, Lottery Credit of $212.39 and Delinquent Charges of $899.10, for net balance of $4,735.50, which are DELINQUENT AND SUBJECT TO PENALTY AND INTEREST.

   The 2025 taxes are in the amount of $5,461.71, with First Dollar Credit of $68.46, Lottery Credit of $205.39 and Delinquent Charges of $923.22, for net balance of $6,111.08, which are DELINQUENT AND SUBJECT TO PENALTY AND INTEREST.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

72C170B4800                                                      ALTA Commitment for Title Insurance (7-1-21) w-WI Mod

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION



**CHICAGO TITLE INSURANCE COMPANY**

**NEW CASTLE TITLE OF LA CROSSE, INC.**

H. Clifford

By:_____
**Authorized Signatory**

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

72C170B4800                                                ALTA Commitment for Title Insurance (7-1-21) w-WI Mod

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



 **CHICAGO TITLE INSURANCE COMPANY**

### SCHEDULE B, PART I—Requirements

All of the following Requirements must be met:

1. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2. Pay the agreed amount for the estate or interest to be insured.

3. Pay the premiums, fees, and charges for the Policy to the Company.

4. Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5. Payment of all taxes, assessments, levied and assessed against subject premises, which are due and payable.

6. Satisfactory evidence shall be produced that all improvements and/or repairs or alterations thereto are completed; that contractor, subcontractor, labor and materialmen are all paid in full.

7. Proper satisfaction of those matters shown in Schedule B, Section 2, if any.

8. Copy of properly executed Owner's Affidavit as to construction liens.

9. A petition for bankruptcy was filed in United States Bankruptcy Court for the Western District of the State of Wisconsin by Tammy A. Hass, Debtor(s), in Case No. 1-22-10843-cjf. The Company requires copies of the docket sheet, petition with schedules and other satisfactory final nonappealable orders, plans or documents in the bankruptcy proceedings authorizing the contemplated transaction. At the time the Company is furnished these items, the Company may make additional requirements or exceptions.

10. Deed executed from Tammy A. Hass, debtor in possession in Case No. 1-22-10843-cjf, United States Bankruptcy Court, Western District, State of Wisconsin to Marcus Klug and Kate Klug.

    The proposed Deed should either designate the subject premises as non-homestead, identify Grantor as single, or be joined in by the spouse and have their marital status typed thereon.

    The Company requires receipt of written consent by the Chapter 13 Trustee and the Bankruptcy Court to the proposed conveyance to be insured.

11. Mortgage executed by Marcus Klug and Kate Klug to State Bank Financial.

    The proposed Mortgage should either designate the subject premises as non-homestead, identify Grantor as single, or be joined in by the spouse and have their marital status typed thereon, unless this is a "Purchase Money Mortgage."

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

72C170B4800                                                           ALTA Commitment for Title Insurance (7-1-21) w-WI Mod

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

 **CHICAGO TITLE INSURANCE COMPANY**

### SCHEDULE B, PART II—Exceptions

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attached, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I—Requirements are met.

   **NOTE:** Exception 1 of Schedule B-II will be removed only if a gap endorsement is attached to this commitment and the requirements for the issuance of gap coverage as described in the endorsement are met, including the payment of the premium.

2. Special taxes or assessments, if any, payable with the taxes levied or to be levied for the current and subsequent years.

   **NOTE:** Exception 2 of Schedule B-II will be removed only if the Company receives written evidence from the municipality that there are no special assessments against the Land, or that all such items have been paid in full.

3. Liens, hook-up charges or fees, deferred charges, reserve capacity assessments, impact fees, or other charges or fees due and payable on the development or improvement of the Land, whether assessed or charged before or after the Date of Policy.

   The company assures the priority of the lien of the insured mortgage over any such lien, charge or fee.

   **NOTE:** Exception 3 of Schedule B-II will be removed only if the Company receives (1) written evidence from the municipality that there are no deferred charges, hookup fees, or other fees or charges attaching to the property; (2) evidence that the Land contains a completed building; and (3) statement showing that the Land has a water and sewer use account. If the Land is vacant, this exception will not be removed.

4. Any lien, or right to a lien, for services, labor, or material heretofore furnished, imposed by law and not shown by the Public Records.

   **NOTE:** Contact the Company for information on the deletion of this exception.

5. Rights or claims of parties in possession not shown by the Public Records.

---

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

72C170B4800                                          ALTA Commitment for Title Insurance (7-1-21) w-WI Mod

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.


AMERICAN
LAND TITLE
ASSOCIATION

 **CHICAGO TITLE INSURANCE COMPANY**

**NOTE:** Exception 5 of Schedule B-II will be removed only if the Company receives a Construction Work and Tenants Affidavit on a form prepared by the Company. If the affidavit shows that there are tenants, Exception 5 will be replaced by an exception for the rights of the tenants disclosed by the Affidavit.

6. Any encroachment, boundary line overlap, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land title survey of the Land.

7. Easements or claims of easements not shown by the Public Records.

8. Any claim of adverse possession or prescriptive easement.

**NOTE:** Exceptions 6, 7, and 8 of Schedule B-II will be removed only if the Company receives an original survey which (i) has a current date, (ii) is satisfactory to the Company, and (iii) complies with current ALTA/NSPS Minimum Survey Standards or Wisconsin Administrative Code Chapter AE-7 together with the certification agreed on between the Wisconsin Land Title Association and the Wisconsin Society of Land Surveyors on April 1, 1974. If the survey shows matters, which affect the title to the property, Exceptions 6, 7 and 8 will be replaced by exceptions describing those matters.

9. General taxes for the year 2022 and thereafter.

10. Rights of the public in any portion of the subject premises lying within the limits of public roads and public rights of way.

11. This commitment and our policy, when issued, should not be construed so as to insure the subject land contains any particular acreage.

12. Mortgage executed by Timothy A Hass and Tammy A Hass; husband and wife to River Bank, dated June 24, 2015, and recorded on June 26, 2015, as Document No. 1658667, securing the principal sum of $90,000.00.

13. Judgment filed against Timothy A Hass and Tammy A Hass at the address of 3012 Willow Drive, La Crosse, WI 54601 US, in favor of Lebakkens Inc of Wisconsin DBA Lebakkens RTO, Case No. 2017SC000011, and docketed on February 3, 2017, in the principal sum of $503.24.

14. Judgment filed against Timothy Hass and Tammy Hass at the address of 3012 Willow St., La Crosse, WI 54601, in favor of Jerome O. Shepard, Case No. 2016SC000022, and docketed on January 19, 2018, in the principal sum of $10,098.50.

15. Judgment filed against Timothy A. HASS at the address of 3012 WILLOW DRIVE, La Crosse, WI 54601 US, in favor of CINDY AND PAUL SOLIS, Case No. 2017SC001689, and docketed on June 8, 2018, in the principal sum of $6,392.87. (Attorney David Pierce, Jr.)

16. Judgment filed against Tammy Hass at the address of 3012 Willow Dr, La Crosse, WI 54601-7710 US, in favor of LVNV Funding LLC, Case No. 2019SC000409, and docketed on March 27, 2019, in the principal sum of $845.97. (Attorney Gina Ziegelbauer)

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

72C170B4800                                                                 ALTA Commitment for Title Insurance (7-1-21) w-WI Mod

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.





 **CHICAGO TITLE INSURANCE COMPANY**

17. Judgment filed against Tammy Hass at the address of 3012 Willow Dr, La Crosse, WI 54601 US and Timothy Hass at the address of 1928 Jackson St, La Crosse, WI 54601, in favor of Great River Orthodontics, Case No. 2019SC000476, and docketed on April 2, 2019, in the principal sum of $314.63. (Attorney Steven Patrick Doyle)

18. Judgment filed against Tammy Hass at the address of 3012 Willow Dr, La Crosse, WI 54601 US and Timothy Hass at the address of 1928 Jackson St, La Crosse, WI 54601, in favor of Gundersen Health System - Orthodontics, Case No. 2019SC000476, and docketed on April 2, 2019, in the principal sum of $3,769.63. (Attorney Steven Patrick Doyle)

19. Judgment filed against Tammy Hass at the address of 3012 Willow Dr, La Crosse, WI 54601 US and Timothy Hass at the address of 1928 Jackson St, La Crosse, WI 54601, in favor of Hillside Animal Hospital, Case No. 2019SC000476, and docketed on April 2, 2019, in the principal sum of $1,600.14. (Attorney Steven Patrick Doyle)

20. Judgment filed against Tammy Hass at the address of 3012 Willow Dr, La Crosse, WI 54601 US and Timothy Hass at the address of 1928 Jackson St, La Crosse, WI 54601, in favor of Southwest Sanitation LLC, Case No. 2019SC000476, and docketed on April 2, 2019, in the principal sum of $171.55. (Attorney Steven Patrick Doyle)

21. Judgment filed against TAMMY HASS at the address of 3012 WILLOW DR, La Crosse, WI 54601 US, in favor of MIDLAND CREDIT MANAGEMENT, INC., Case No. 2020SC000517, and docketed on July 23, 2020, in the principal sum of $2,175.43. (Attorney Kirk R. Emick)

22. Judgment filed against Tammy Ann Hass at the address of 3012 Willow Drive, La Crosse, WI 54601, in favor of Law Office of Ann I Brandau S.C., Case No. 2018FA000216, and docketed on February 5, 2021, in the principal sum of $1,240.00.

23. 2022 taxes in the amount of $4,331.71, which are DELINQUENT AND SUBJECT TO PENALTY AND INTEREST.

24. 2023 taxes in the amount of $4,516.42, which are DELINQUENT AND SUBJECT TO PENALTY AND INTEREST.

25. 2024 taxes in the amount of $4,735.50, which are DELINQUENT AND SUBJECT TO PENALTY AND INTEREST.

26. 2025 taxes in the amount of $6,111.08, which are DELINQUENT AND SUBJECT TO PENALTY AND INTEREST.

There are no outstanding Special Assessments.

The covered premises are subject to sewer, water and storm water utility charges.

Bankruptcy proceedings commenced on May 24, 2022, in the United States Bankruptcy Court for the Western District of the State of Wisconsin, Case No. 1-22-10843-cjf, naming Tammy A Hass as Debtor. (Attorney Greg P. Pittman)

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; and Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

72C170B4800

ALTA Commitment for Title Insurance (7-1-21) w-WI Mod

**Copyright 2021 American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

### UNITED STATES BANKRUPTCY COURT FOR
### THE WESTERN DISTRICT OF WISCONSIN

---

In Re:                                                     In Bankruptcy No:

**TAMMY HASS**

        **Debtor**                                     **Case No: 22-10843 (Chapter 13)**

---

### NOTICE OF MOTION TO SELL CERTAIN REAL ESTATE FREE AND CLEAR OF ALL
### LIENS PURSUANT TO BANKRUPTCY CODE SECTIONS 363(f)

---

**PLEASE TAKE NOTICE**, that the Debtor, Tammy Hass, by her attorneys PITTMAN & PITTMAN LAW OFFICES, LLC by Greg P. Pittman, have filed a Motion to Sell Certain Real Estate Free and Clear of All Liens.   A copy of said Motion is attached thereto.

Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the Court to approve said motion, or if you want the Court to consider your views on the motion, then on or before *March 31, 2026,* you or your attorney must file with the Court, in writing, your position in said matter and request a hearing and file your original document with the *United States Bankruptcy Court, 120 N. Henry Street, RM 340, Madison, WI 53703-2559,* and a copy to *Attorney Greg P. Pittman, PITTMAN & PITTMAN LAW OFFICES, LLC, 712 Main Street, La Crosse, Wisconsin 54601.* If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought by the motion and may enter an order granting that relief.

Dated this _____10th_____ day of March, 2026, at La Crosse, Wisconsin.

        **PITTMAN & PITTMAN LAW OFFICES, LLC**

        By:  **s/Greg P. Pittman**_____
              **Greg P. Pittman**
              **Attorney No: 1073787**
              **Attorney for Debtor**
              **712 Main Street**
              **La Crosse, WI  54601**
              **(608) 784-0841**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| In Re: | In Bankruptcy No: |
| **TAMMY HASS** | |
| **Debtor** | Case No: 22-10843 (Chapter 13) |

**AFFIDAVIT OF SERVICE BY MAIL**

| | |
|---|---|
| **STATE OF WISCONSIN** | ) |
| | ) SS |
| **COUNTY OF LA CROSSE** | ) |

The undersigned being first duly sworn states that a true copy of *Motion to Sell Certain Real Estate, Notice of Motion and Proposed Order* was served upon attached list either by electronic filing or by enclosing the same in an envelope postpaid for first class handling which bore the sender's name and return address and addressed to each such individual at their respective post office addresses and deposited in a U.S. Post Office depository in La Crosse, Wisconsin on March 10th, 2026.

Lebakkens Inc.
d/b/a Lebakkens RTO
Attn: Officer
2536 Rose Street
La Crosse, WI 54603-1614

Cindy Solis
Paul Solis
3200 South 28th Street
La Crosse, WI 54601

LVN Funding LLC
Officer Attn: Attorney Gina Ziegelbauer
Messerli & Kramer
3033 Campus Dr., Ste. 250
Plymouth, MN 55441

Jerome Shepard
N3661 Lincoln Street
Stoddard, WI 54652

Great River Orthodontics
Attn: Officer/Attorney Steven Doyle
205 5th Ave. S, Ste. 600
La Crosse, WI 54601

Gundersen Health Systems – Orthodontics
Attn: Officer/Attorney Steven Doyle
205 5th Ave. S, Ste. 600
La Crosse, WI 54601

Hillside Animal Hospital
W5706 State Hwy. 33 Trunk
La Crosse, WI 54601

Southwest Sanitation LLC
Attn: Officer/Attorney Steven Doyle
226 N. 6th Street
La Crosse, WI 54601

Midland Credit Management, Inc.
Attn:  Officer/Attorney Kirk R. Emick
Post Office Box 2037
Warren, MI 48090-2037

Ann Brandau, S.C.
Attn: Officer/Attorney Ann Brandau
Post Office Box 153
Onalaska, WI 54650-0153

**s/Wanda Nickelotti**
**Wanda Nickelotti**

**Subscribed and sworn to before me**
**this ___10th___ day of March, 2026.**

**s/Greg P. Pittman**
**Greg P. Pittman, Notary Public**
**My Commission is Permanent.**

Label Matrix for local noticing
0758-1
Case 1-22-10843-cjf
Western District of Wisconsin www.wiwb.uscour
Eau Claire
Tue Mar 10 09:51:13 CDT 2026

David L. Abt
Abt Law Office
210 North Main Street
Westby, WI 54667-1108

Achilles Finance LLC dba Advance Financi
100 Oceanside Dr
Nashville, TN 37204-2351

Ad Astra Recovery
7330 West 33rd Street North
Suite 118
Wichita, KS 67205-9370

Aidvantage on behalf of
Dept of Ed Loan Services
PO BOX 300001
Greenville, TX 75403-3001

Alliant Capital Management - HDH
c/o Weinstein & Riley, P.S.
2001 Western Ave., Ste. 400
Seattle, WA 98121-3132

(p)AMERICOLLECT INC
PO BOX 2080
MANITOWOC WI 54221-2080

Ann Brandau Law Office LLC
PO Box 153
Onalaska WI 54650-0153

CHRYSLER CAPITAL
P.O. BOX 961275
FORT WORTH, TX 76161-0275

Caine & Weiner
Attn: Bankruptcy
5805 Sepulveda Blvd
Sherman Oaks, CA 91411-2546

Capital One Bank (USA), N.A.
by American InfoSource as agent
PO Box 71083
Charlotte, NC  28272-1083

Capital One Bank USA NA
PO Box 30281
Salt Lake City, UT 84130-0281

Credit Bureau Data Inc
518 State Street
La Crosse, WI 54601-3326

Credit Management LP
6080 Tennyson Parkway
Suite 100
Plano, TX 75024-6002

Credit One Bank
PO Box 98872
Las Vegas, NV 89193-8872

Foster and Monroe LLC
3770 Transit Rd
Orchard Park, NY 14127-2053

Great River Orthodontics
1200 Main St.
La Crosse, WI 54601-4476

Gundersen Health System
1900 South Ave.
La Crosse, WI 54601-5496

(p)MARK HARRING
ATTN STANDING TRUSTEE
122 WEST WASHINGTON AVENUE SUITE 500
MADISON WI 53703-2758

Tammy A Hass
3012 Willow Drive
La Crosse, WI 54601-7710

Hillside Animal Hospital
W5706 State Hwy 33 Trunk
La Crosse, WI 54601

IRS - Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

(p)JEFFERSON CAPITAL SYSTEMS LLC
PO BOX 7999
SAINT CLOUD MN 56302-7999

Jerome Shepard
N3661 Lincoln Ct.
Stoddard, WI 54658-9041

Kwik Trip
1626 Oak St.
La Crosse, WI 54603-2308

LVNV Funding LLC
c/o Messerli & Kramer
3033 Campus Dr. Ste 250
Minneapolis, MN 55441-2685

LVNV Funding, LLC c/o Resurgent Capital Serv
PO Box 10587
Greenville, SC 29603-0587

(p)LA CROSSE COUNTY TREASURER
212 6TH STREET N ROOM 1900
LA CROSSE WI 54601-3200

Lebakkens
2536 Rose Street
La Crosse, WI 54603-1614

Messerli & Kramer, PA
3033 Campus Dr, Ste 250
Minneapolis, MN 55441-2685

Midland Credit Management
350 Camino De La Reina Ste 100
San Diego, CA 92108-3007

Midland Credit Management, Inc.
PO Box 2037
Warren, MI 48090-2037

Midland Fund
Attn: Bankruptcy
350 Camino De La Reine, Suite 100
San Diego, CA 92108-3007


Midwest Dental
20 Copeland Ave #201
La Crosse, WI 54603-3421

Navient Solutions Inc
Attn: Bankruptcy
P.O. Box 9500
Wilkes-Barre, PA 18773-9500

Neighborhood Smiles
3143 State Rd
La Crosse, WI 54601-6964


PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

Pink Dogwood 13, LLC
PO BOX 1931
Burlingame, CA 94011-1931

Pinnacle Service Solutions LLC
4408 Milestrip Rd #247
Blasdell, NY 14219-2553


Greg P. Pittman
Pittman & Pittman Law Offices, LLC
712 Main Street
La Crosse, WI 54601-4121

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Progressive Insurance
5920 Landerbrook Drive
Cleveland, OH 44124-6506


Resurgent Capital Services
Po Box 10497
Greenville, SC 29603-0497

River Bank
4401 Mormon Coulee Road
La Crosse, WI 54601-8220

River Bank
145 Main
Stoddard, WI 54658-4209


Santander Consumer USA
Attn: Bankruptcy
Po Box 961245
Fort Worth, TX 76161-0244

Secretary of Treasury
Treasury Department
1500 Pennsylvania Avenue N.W.
Washington, DC 20220-0001

Securities and Exchange Commission
175 West Jackson Boulevard
Suite 900
Chicago, IL 60604-2908


Security Finance
Attn: Centralized Bankruptcy
Po Box 1893
Spartanburg, SC 29304-1893

Jerome Shepard
N3661 Lincoln Court
Stoddard, WI 54658-9041

Southwest Sanitation
226 N 6th
La Crosse, WI 54601


Speedy Cash
PO Box 780408
Wichita, KS 67278-0408

Speedy/Rapid Cash
PO Box 780408
Wichita, KS 67278-0408

Telecom Self-reported
Po Box 4500
Allen, TX 75013-1311


Tri-State Adjustments
Attn: Bankruptcy
3439 East Avenue South
La Crosse, WI 54601-7241

Tri-State Ambulance
235 Causeway Blvd
La Crosse, WI 54603-3119

U.S. Trustee's Office
780 Regent Street, Suite 304
Madison, WI 53715-1292


(p)TEMPOE  LLC DBA WHY NOT LEASE IT
ATTN BOB HOLWADEL
720 EAST PETE ROSE WAY SUITE 400
CINCINNATI OH 45202-3576

Wisconsin Department of Revenue
Special Procedures Unit
P.O. Box 8901
Madison, WI 53708-8901

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Americollect
Po Box 1566
1851 South Alverno Road
Manitowoc, WI 54221

Mark Harring
122 West Washington Ave.
Suite 500
Madison, WI 53703-2578

JEFFERSON CAPITAL SYSTEMS LLC
PO BOX 7999
ST CLOUD, MN 56302-9617


(d)Jefferson Capital Systems, LLC
PO Box 7999
St. Cloud, MN 56302-9617

La Crosse County Treasurer
212 6th St. North
La Crosse WI 54601

Portfolio Recovery Associates, LLC
POB 12914
Norfolk VA 23541


Why Not Lease It
1750 Elm Street Suite 1200
Manchester, NH 03104

End of Label Matrix
Mailable recipients    58
Bypassed recipients     0
Total                  58